## JAMES ANDREWS *versus* NATHANIEL G. MARSHALL.

When a contract made in violation of law has been executed, Courts will not lend their aid to compel one party to restore the other to the condition which he held before the contract, unless the statute has made some provision therefor.

The provision in R. S. of 1841, c. 161, § 2, (R. S. of 1857, c. 126, § 2,) making a transfer of property with intent to delay or defraud creditors, or defraud prior or subsquent purchasers or other persons, criminal in both parties, does not so far repeal or modify former statutes, as to make such transfer void as between the parties when actually perfected.

In the case of a fraudulent mortgage of chattels executed and completed, the record of the mortgage is equivalent to a delivery of the goods, and passes the title to the mortgagee, so far as to enable him to maintain an action against an officer for the value of goods attached, and sold at private sale, without any account having been kept, though sold with the assent of the mortgager in whose possession the goods were found when attached. DAVIS, and GOODENOW, JJ., *dissenting.*

A made a fraudulent mortgage of goods to B, which was duly recorded. A's creditors attached the goods, and they were sold by the officer, by consent of A and the attaching creditors; but a part of them were sold at private sale, and no account of sales kept. — *Held,* that B may maintain an action against the officer for the value of that part of the goods thus irregularly sold. DAVIS, and GOODENOW, JJ., *dissenting.*

ON EXCEPTIONS to the ruling of GOODENOW, J.

THIS was an action of TRESPASS to recover the value of a stock of goods, attached by Rufus M. Lord, a deputy of the defendant, as Sheriff of this county, by virtue of a writ against Jacob L. Chase, who had them in possession.

The plaintiff claimed the goods under a mortgage bill of sale given him by Chase, duly recorded prior to the attachment.

The defendant contended that the mortgage was fraudulent and void as against Chase's creditors.

It appeared in evidence, that, after the return and entry in Court of the writs upon which the goods had been attached, and also of the writ in this action, but before judgment, due notice having been given to Andrews to replevy the goods, upon request by the first attaching creditor, and consent of

the other, attaching creditors and the debtor in writing, the deputy, Lord, advertised the stock of goods to be sold at public auction, and, pursuant to the advertisement, and by adjournment from day to day, proceeded to sell a part of the goods from day to day for several days:—that during the intervals of the adjournments, with the consent and assistance of Chase, the debtor, he sold a part of the goods at private sale, and kept no account of the sales at private sale.

The defendant's counsel requested the presiding Judge to instruct the jury, that Andrews had no right by law to take advantage of any irregularities in the sales made by Lord, occurring not till after the commencement of this suit, to hold him liable as a trespasser *ab initio*.

This instruction the Judge declined to give, but charged the jury that, if they should find that the mortgage to Andrews was made to defraud the creditors of Chase, yet he was not thereby barred from recovering against the officer for the value of the goods sold at private sale after the commencement of this suit, and of which no account was kept; and instructed the jury to find a verdict for the value of the goods so sold, even if they should find that the mortgage was made to defraud creditors. The verdict was for the plaintiff.

To which rulings, instructions, and refusal to instruct, the defendant excepted.

*H. W. Paine* and *Eastman*, in support of the exceptions.

1. Sec. 2, c. 161, R. S., 1840, imposes the penalty of fine and imprisonment on both the parties to a transfer of property, made to defraud creditors.

2. This section is a clear prohibition of *such* transfers; and seller and buyer are in *pari delictu.*

" A penalty implies a prohibition although there are no prohibitory words in the statute." Per HOLT, C. J., in *Bartlett* v. *Vinor*, Carth., 252 ; *Lane* v. *Hodsdon*, 11 East, 300 ; *Parker* v. *Dick*, 11 East, 502 ; *Wheeler* v. *Russell*, 17 Mass., 253.

3. The mortgage having been made to defraud creditors of the mortgager, was prohibited, and neither the mortgager nor

mortgagee can have the aid of a court of law to enforce it. *Sheffren* v. *Gordon & al.*, 12 East, 304; *Drury* v. *DeFontain*, 1 Taunt., 139.

When one party attempts to enforce a forbidden contract, or to reap the fruits of it, the other may show the character of the transaction and defeat the suit. This is the law in England. *Langton* v. *Hughes*, 1 M. & S., 593. This is the law in this country. *Patten* v. *Greely*, 13 Mass., 284; *Robinson* v. *Howard*, 7 Cush. 611.

Had Chase sued the notes he took from Andrews, the latter might have defeated the action by showing the purpose of the mortgage. So, if Andrews had brought replevin for the goods, Chase might have defeated the action by the same proof.

4. These goods were in the possession of Chase and they could not lawfully be taken from him by Andrews, the mortgagee. Chase had all the title, after the mortgage, which he had before.

As to Chase, the officer was a wrongdoer, if to any body. Chase, and Chase alone, had a right to treat the officer as a trespasser *ab initio*.

It is by force of the statute of 13 Elizabeth alone, that the transaction is valid between the parties. That statute is not in force in Maine. It is superseded by another.

*T. M. Hayes* and *R. P. Tapley*, contra.

The opinion of the Court was drawn up by

TENNEY, C. J. — This case has previously been before the law Court, on exceptions taken to the instructions, given to the jury, under evidence substantially the same, as that which was presented at the last trial, *Andrews* v. *Marshall*, 43 Maine, 272. At the former hearing, the presiding Judge instructed the jury, that although the officer might by his irregularities in the sale have become a trespasser *ab initio*, as regards Chase, yet the plaintiff in this action, can derive no advantage from such irregularities. If they found that the

mortgage was made to defraud or delay creditors, the defendant may justify under his attachment, and contest the validity, as to Chase's creditors, of the mortgage to the plaintiff, in the same manner as if the proceedings had been regular and legal. That if the mortgage was fraudulent, the defendant would be answerable to Chase, and not to the plaintiff, for any such irregularities.

These views the whole Court regarded as erroneous in law, and the exceptions were sustained, on the authority of the statute of the 13th of Elizabeth, touching conveyances made to hinder, delay and defraud creditors, and constructions given to that statute in England and in this country. The Court held the true rule, as decided from the Act of 13 Elizabeth, and the authorities applicable thereto, to be, " The fraudulent vendor or grantor parts with his interest in the property conveyed to his vendee or grantee; the law affords him no aid, and equity no relief in reclaiming it."

At the second trial, instructions were given to the jury, in conformity with the decision of the whole Court, upon the same point, which was raised in the previous trial; and exceptions were taken, not because the instructions were erroneous, under the settled construction of the statute of the 13th of Elizabeth, but that the statute was effectually repealed by the statute of this State, in the revision of 1841, c. 161, § 2, which makes it criminal, in both parties, to a transfer of property made with " intent to defraud prior or subsequent purchasers, or to hinder, delay or defraud creditors or other persons," &c. It does not appear from the report of this case, in the 43d Maine, 272, that this point was taken in argument.

It is, undoubtedly, well settled, as a general principle, that an action will not lie upon a contract made in violation of a statute, or of a principle of the common law. The authorities were cited, and examined upon this point in *Wheeler* v. *Russell*, 17 Mass., 258, and the doctrine fully recognized.

But it is also well settled, that where a contract made in violation of law has been executed, Courts will not lend their aid

to compel one party to restore the other to the condition which he held before the contract, unless the statute has made some provision for such a purpose.

The principal question argued in this case is not new in this State. The statute now relied upon was invoked in the case of *Ellis* v. *Higgins,* 32 Maine, 34, which was a real action, to recover possession of a parcel of land conveyed by the tenant to the demandant, the former continuing in the occupation thereof. The tenant proposed to prove his own fraud, for the purpose of defeating his own deed. SHEPLEY, C. J., in delivering the opinion of the Court, says " The counsel does not notice the distinction between *executed* and *executory* contracts." — "Between the parties to the fraud, the law renders no aid to either. The title, though by a fraudulent deed, passed from the tenant to the demandant. The statute does not declare it to be void. If it had been a contract to convey, it could not have been enforced. It was an actual conveyance. It passed the title without any aid from the Courts."

On examination of the statute, it will be found, that crime consists, not in the intention and an abortive effort to transfer the property, but in the conveyance or assignment of any estate or interest in lands, goods, &c., with intent to defraud; thereby treating the transaction as effectual between the parties, when the contract has been carried into full effect.

It is insisted that, the goods being in the possession of Chase, they cannot lawfully be taken from him by the plaintiff.

The case finds, that the goods were conveyed to the plaintiff in mortgage. It is not necessary to cite authorities to show that this constituted a full transfer of the property, subject only to the right of redemption, by a fulfilment of the condition on the part of the mortgager. It is not pretended that the latter obtained possession after the transfer, against the consent of the former. The possession was probably by some agreement between the parties to the mortgage, not inconsistent with its legal effect, and was in submission to the plaintiff's title to the goods. The recording of the mortgage

was tantamount to a delivery of the property; and the statute itself, providing for the recording of the mortgage of personal property, has made the record equivalent to the delivery of possession of personal property mortgaged to the mortgagee, and the retention by him afterwards.

In the case of *Ellis* v. *Higgins,* before cited, the possession of the grantor, even if the deed was fraudulent, was not regarded as an obstacle to the demandant's recovery. And, in the case at bar, the title to the goods had passed by a contract which was complete, and was in the plaintiff, as has been already decided in this case.

*Exceptions overruled:—Judgment on the verdict.*

RICE, APPLETON, and KENT, JJ., concurred.
GOODENOW, and DAVIS, JJ., non-concurred.

DAVIS, J., dissenting. — When this case was under consideration before, I made some suggestions in a note, which the reporter published as a dissenting opinion. I still entertain the same views which I then somewhat imperfectly expressed.

The suit is by a mortgagee, against an officer, for taking the goods embraced in the mortgage, upon sundry writs against the mortgager. Upon the first trial, the mortgage was found by the jury to be fraudulent and void as against the creditors for whom the property was attached. But the officer, " with the consent and assistance of the debtor," who had possession of the goods at the time of the attachment, sold some of them at private sale. This would have rendered him liable as a trespasser *ab initio,* if the debtor had not given such consent. Did it, having been done with his consent, render the officer liable to the *fraudulent mortgagee ?*

The statute of Eliz., 13, c. 5, making fraudulent sales void, as against the creditors of the vendor, had its origin in the most obvious principles of justice and equity, and, from the first, has been construed liberally in favor of the object to be attained by it. *Gooch's case,* 5 Coke, 60. As Lord MANSFIELD says in *Cadogan* v. *Kennett,* Cowp., 434, " it cannot

Andrews *v.* Marshall.

receive too liberal a construction, or be too much extended, in suppressing fraud."

Fourteen years later, another Act was passed, making fraudulent conveyances void as to subsequent purchasers. The statute of 27 Eliz., c. 4, applied to sales of real estate only. The first statute applied to all fraudulent sales, whether of personal or real estate. All such sales, though valid and binding between the parties thereto, were declared to be utterly void as to creditors, and subsequent purchasers. And in those cases where *creditors* subsequently became *purchasers*, their rights have been sustained as well under the first Act as under the second.

The fact of fraud being admitted or established, it would seem that the law would afford the fraudulent vendee no aid, under any circumstances, against the creditors of the vendor. Such was the rule laid down in the case of *Daggett* v. *Adams*, 1 Maine, 198.

In one of the earliest cases under the statute, decided in the 43d year of Elizabeth, where the fraudulent vendor remained in possession until his death, after which the vendee took possession, he was held to be liable in trespass, to the administrator. *Bethel* v. *Stanhope*, Cro. Eliz., 810. This doctrine was denied in the case of *Osborne* v. *Moss*, 7 Johns., 161, where it was held that a creditor who took the goods, *without suit*, from a fraudulent vendee, was liable to him in trespass, notwithstanding the fraud. The case of *Hawes* v. *Leader*, Cro. Jac., 270, was cited by the Court; but it does not sustain the decision. In the latter case, a similar action was sustained, by a fraudulent vendee, against the administrator of the vendor; but it was expressly upon the ground that the administrator did not plead that the estate was in debt, and, therefore represented, not the *creditors*, but the *intestate*. In a later case, the Supreme Court of New York questioned the soundness of the decision in *Osborne* v. *Moss*, and commended the rule laid down in *Bethel* v. *Stanhope*. *Babcock* v. *Booth*, 2 Hill, 181.

But, if we concede, when the fraudulent vendee is in *actual possession*, that the creditor can obtain the goods only by legal process, and a strict compliance with the provisions of the statute, it by no means follows that this is his only remedy when the goods remain in possession of the vendor. In such case, the creditor may take the goods by *purchase* from the vendor, or by any means to which he consents, without subjecting himself to any liability to the fraudulent vendee. There are no cases in which this is denied; while there are many in which it is assumed, or implied. *Wadsworth* v. *Havens*, 3 Wend., 411; *Burrel's case*, 6 Coke, 72; *Boyd* v. *Brown*, 17 Pick., 453; *Van Deusen* v. *Frink*, 15 Pick., 449; *Clapp* v. *Leatherbee*, 18 Pick., 131. Some of these cases relate to conveyances of real estate. But they all, and many more that might be cited, assume the doctrine to be unquestioned, that, under the statute of 13 Elizabeth, the creditor of a fraudulent vendor or grantor may take the property from him by legal process, or, if he is in possession, by *purchase*. A seizure and sale on execution is a statute sale for the vendor. A voluntary sale by him, to his creditors, or by them, with his consent, and in payment of their demands, is a legal equivalent to a sale by process of law.

There is no difficulty in applying these principles to the case at bar. The defendant, as an officer, represented attaching creditors. Whatever he did, in the sale of the goods, that was irregular, and not in conformity to the provisions of the statute, he did *with the consent* of the debtor, who was in possession of the goods at the time of the attachment. This possession was explained; but the mortgage to the plaintiff was proved by other evidence to be fraudulent, so that it was like any other case of fraudulent sale without delivery, leaving the property liable to be taken by creditors, or subsequent purchasers. *Ludwig* v. *Fuller*, 17 Maine, 162. As to them, the mortgage was utterly void.

It is not unusual for debtors, when their property is attached, to waive the requirements of the statute in regard to the

sale of it by the officer. In such cases, the sale is equally as valid as when the statute provisions are strictly complied with. In this case, it is expressly found that the debtor *consented* to the proceedings of the officer. It was competent for him to give such consent. As to the creditors, he was the owner. They were not bound to consult any one else. And the sale being valid as to him, because made with his consent, to hold that it rendered the agent of the creditors liable in trespass to a fraudulent vendee, who, as against them, had no legal title, is a conclusion to which I cannot assent.