## DOOLITTLE *v.* LYMAN.

A party, to establish the validity of a note given to him for intoxicating liquor sold by him in this State, since the act of 1855 took effect, must show that he was legally authorized to make the sale.

Where a party claims that a sale of intoxicating liquor, made in another State, is illegal under the laws of that State, the burden of proving the law that makes the sale illegal is on him.

A mortgage of personal property, executed in due form, and recorded, given to secure the debt described in the condition, which at the time of the execution of the mortgage was a debt actually and justly due from the mortgagor to the mortgagee, is not, by the common law or by sections 5, 8, and 10 of chapter 132, or by sections 19, 20, and 21 of chapter 215 of the Revised Statutes, rendered void as against a subsequent purchaser, by the mere fact that the parties to it may have also designed to hinder or delay the creditors of the mortgagor.

TROVER, for the alleged conversion of a horse on the 11th day of February, 1861. Both parties claimed under one Entwistle; the defendants, Edward E. Lyman and Norris G. Guernsey, by virtue of a mortgage, and the plaintiff, Franklin V. Doolittle, by an

exchange of horses made after the date of the mortgage. The defendants caused the horse to be sold at auction, claiming under their mortgage. The plaintiff had been in possession of the horse from the time of the exchange until he was taken by the defendant's agent and sold.

The evidence of the defendants tended to show, that before the execution of the mortgage they and Entwistle had sundry dealings together, and he became indebted to them; that a part of said indebtedness was for ale sold at Keene, in this State, by the defendants to Entwistle; and that on the day of the date of the mortgage a settlement was had and a note given by Entwistle to the defendants for the balance found due, and that this note was the debt purporting to be secured by the mortgage; that something was due on the note when the horse was sold; and that the mortgage was executed with all the formalities required by law in such cases.

The evidence for the defendants also tended to show that the horse in question was obtained by Entwistle from the defendants by exchange, a considerable time previous to the settlement above mentioned, and that the boot between the horses was a part of the indebtedness of Entwistle to the defendants, embraced in said settlement.

The defendants did not offer evidence to show that they were agents under the law of New-Hampshire for the sale of intoxicating liquors, neither did the plaintiffs offer to show that they were not such agents.

The plaintiff's evidence tended to show that prior to the day when the mortgage was made, one Barnard, of Boston, in Massachusetts, held a note against Entwistle, which had been placed in the hands of an agent in this State for collection, who had requested Entwistle to pay the note, and from whom the defendants had learned its existence and amount. The evidence further tended to show, that on the day of the execution of the mortgage, the defendant Lyman called at Entwistle's house and left word for Entwistle that the Barnard note was about to be sued, and his property attached, and if he would mortgage his property to the defendants he could save it from being attached on Barnard's suit, and make his own terms with Barnard; that this message was communicated to Entwistle before he executed the mortgage; that said Lyman acted for the defendants in taking the mortgage; that after making the mortgage Entwistle told the agent of Barnard that he had mortgaged his property and should do as he liked about paying the note; and that finally the agent accepted one half of the face of the note and surrendered it.

The evidence also tended to show that the note of Barnard was given for the price of intoxicating liquors, sold by him to Entwistle in Massachusetts, but no evidence was offered in regard to the laws of Massachusetts in relation to such sales, or that Barnard had or had not any license to sell intoxicating liquors.

The evidence also tended to show that a short time after the execution of the defendant's note and mortgage, Entwistle went to Lyman, the defendant, and complained to him that the note was too large; that a large portion of the note was made up from boot between horses; and asked for a deduction. Lyman testified that some sum

between two and three hundred dollars was agreed to be indorsed or given in; that the sum might exceed three hundred dollars. The precise amount was not recollected, but was embraced in an indorsement of $600 made on said note as of December 31, 1859. The plaintiff's evidence also tended to prove that the defendants' note was much larger than the balance due them at the time of settlement, and that nothing was in fact due on it when the horse was sold by them.

The defendants asked the court to instruct the jury, that unless it be made to appear affirmatively that the defendants have no license to sell intoxicating liquors, the sale of the ale can not be presumed to be illegal; and that if the price of the ale formed a part of the consideration of the note, still the mortgage was in the nature of an executed contract, and the defendants have a right to hold the mortgaged property under the mortgage as against the plaintiff; that unless the jury found that Barnard had a legal claim against Entwistle at the time of the execution of the mortgage, the mortgage could not be treated as made to delay, hinder, or defraud creditors; that if the mortgage was made with the intent to delay, hinder, or defraud creditors, the plaintiff, not sustaining that relation to Entwistle either before or after the execution of the mortgage, could not avoid the mortgage as fraudulent; and that if Entwistle disaffirmed the note and mortgage, he thereby disaffirmed the purchase of the horse of the defendants, and that they might then hold the horse under their original title.

The court declined so to instruct the jury, but instructed them that the plaintiff must show in himself a general or special property in the horse in suit at the time of the alleged conversion to entitle him to maintain this action; that if there was nothing due on the note secured by mortgage at the time of the conversion, the defendants had no claim upon the horse; if a balance remained due, was the ale intoxicating liquor? if so, did the price of ale unlawfully sold make a part of the consideration of the defendants' note? if so, it would render the note and mortgage illegal and invalid against these defendants; and that it was for the defendants to show the sale to be lawful, by showing themselves agents under the laws of the State, if they were so; or, was it the intent of Entwistle when he gave the mortgage to the defendants, to use it as a cover to put his property in such a position as to defraud, hinder, or delay his creditors, and was this fraudulent purpose known to the defendants and participated in by them when they took the mortgage; to render the deed fraudulent in law, they must find it made for the purpose to avoid or defeat or delay some creditor, holding a just debt against the grantor at the time of the execution of the deed; or, was the deed executed in bad faith under the general purpose or intent, not only as a cover, but upon a secret trust, or reservation participated in by both parties to give the mortgagor an advantage, present or future, to manage or control his own property to his future benefit, and to the prejudice of his creditors; unless these questions could be answered for the plaintiff, they would find for the defendants; or the jury might look into the consideration of the debt itself, and

inquire whether it was a just debt due and owing from the mortgagor to the mortgagee, and whether said deed was made and executed for the purpose of securing such a debt; or, whether it was made and executed in bad faith upon a consideration fraudulent and fictitious and in avoidance of the requisitions provided by the statute law, and the oaths of the parties thereto; if so, the deed would pass no property to the defendants as against the plaintiff. To these rulings and instructions the defendants excepted, and the jury having returned a verdict for the plaintiff, the defendants moved to set the same aside.

*Wheeler & Faulkner*, for the defendants.

*Cushing*, for the plaintiff.

BARTLETT, J.   If it appeared that the defendants' note was given in part for intoxicating liquor sold by them in this State since the act of 1855 took effect, it was incumbent on them to show that they were legally authorized to make the sale, in order to establish the validity of the note.  *Bliss* v. *Brainard*, 41 N. H. 256.   If the defendants claimed that Barnard's note, being given for intoxicating liquor sold in Massachusetts, was founded upon an illegal consideration, they should have proved the law of Massachusetts which they claimed rendered the sale illegal, if the inquiry became material.   *Ferguson* v. *Clifford*, 37 N. H. 98.   The sale of the horse to the defendants by Entwistle, and the mortgage by him to the defendants, were not one transaction, and an avoidance of the mortgage would not defeat the sale.

Our statutes provide that the mortgagor and mortgagee of personal property shall make and subscribe an affidavit in substance as follows: " We severally swear that the foregoing mortgage is made for the purpose of securing the debt specified in the condition thereof, and for no other purpose whatever, and that said debt was not created for the purpose of enabling the mortgagor to execute said mortgage, but is a just debt honestly due and owing from the mortgagor to the mortgagee;" and that "such affidavit, with the certificate of the justice who administered the oath, shall be made upon or appended to such mortgage and recorded therewith;" and that "no such mortgage shall be valid against any person except the mortgagor, his executors and administrators, unless possession is delivered, or the mortgage is sworn to and recorded in the manner herein prescribed."   Rev. Stat., ch. 132, secs. 5, 8, and 10.   As the defendants did not take possession under their mortgage until after the delivery of the horse to the plaintiff, the latter contends that, under the statute cited, if the mortgage was made for any other purpose than to secure the debt mentioned in the condition, it would be invalid as against any person but the mortgagor and his personal representatives, although the debt described in the condition was justly due from the mortgagor to the mortgagee, upon the ground that, the affidavit being thus untrue, the mortgage was not executed in conformity to the statute.   But we do not think that under this

statute this mortgage, which was executed in due form, and duly recorded, is to be held invalid as against the plaintiff, a subsequent purchaser, merely because the parties, in addition to securing the just debt described in the condition, may have also designed to hinder or delay the creditors of the mortgagor. The statute contains no express provision to this effect, and we think none is to be implied. Such a construction would seem to leave the mortgage in full force between the parties, but to avoid it as against all others, even such as were not creditors of or *bonâ fide* purchasers from the mortgagor, and even though it were in the hands of an innocent assignee. We think that the legislature did not intend such results, especially where no rights of creditors were concerned. but were content to leave parties guilty of perjury in such affidavits, to the criminal law. Rev. Stat., ch. 132, sec. 6. Our view, that under the statute in question a mortgage of personal property, made to secure the debt described in the condition, which was justly due from the mortgagor to the mortgagee, would not be rendered void as against a subsequent purchaser by the mere fact that the parties had also another purpose beside securing the debt, seems supported by the terms of the act of December 17, 1840, which required the affidavit only in the case of the mortgage of personal property liable to attachment; Laws of 1840, 491 ; showing that the great object of the statute was the protection of creditors. The case of *Belknap* v. *Wendell*, 31 N. H. 92, does not conflict with these views, for there a liability, as security against which the mortgage was given, was not truly described in either the condition or the affidavit.

The plaintiff also claims that the mortgage to the defendants is void under sections 19, 20, and 21 of chapter 215 of the Revised Statutes, which forbid the fraudulent making or receiving of a mortgage of property, to prevent its attachment, &c. Although the doctrine of avoiding contracts, as impliedly forbidden by statute, has been carried so far that there seems little occasion to extend its limits, yet in this State, so far as we are informed, such a mortgage, made to secure a valid debt, and duly executed and recorded, has always been held good as between the parties. The statute does not forbid the making of a mortgage, and such a mortgage, executed in due form and recorded, being sufficient at law to pass the legal title to the mortgagee, we think it would be a somewhat novel and dangerous doctrine to hold that, as between the parties, the deed is void under this statute because of an intended fraud on creditors ; and if the deed is valid as between the parties, this position of the plaintiff wholly fails. For such a mortgage, strictly speaking, the debt, which is in no way illegal, is the consideration, and the intent forms no part of it ; and this distinguishes the present from a large class of cases. The illegality is not in the mere making of the mortgage, but in the particular purpose for which it is made ; and as there is no question in relation to the consideration, it would seem sufficient to avoid the mortgage so far as necessary to defeat the illegal purpose, and that is as against the creditors, whom the statute intends to protect ;. while to go beyond this, and hold the mortgage entirely void, might allow the fraudulent mortgagor to

derive advantage from his own illegal act at the expense of innocent parties. See *White* v. *The Franklin Bank*, 22 Pick. 181, 188. In fact, so far as relates to the question here, the mortgage, having been duly recorded, is to be regarded as an executed contract, for as between the parties it passed the legal title to the horse, and was no more executory, so far as this case is concerned, than a completed sale of liquor, which, though prohibited, is not held void. *State* v. *Plaisted*, 43 N. H. 413; *Andrews* v. *Marshall*, 48 Me. 26.

The statute, 13 Eliz., ch. 5, does not extend to subsequent purchasers; *Cadogan* v. *Kennet*, Cowp. 434; *Sloane* v. *Cadogan*, cited in 3 Rep. 82, b, note (T. & F's ed.); and the 27 Eliz., ch. 4, relates to lands and real estate, and not to personal property like that in question here. 1 Story Eq., sec. 352, n., 425, n.; Atherley Set. 207*; *Jones* v. *Crowder*, 1 Sim. & S. 315; *Sloane* v. *Cadogan*, and see *Danbury* v. *Cockburn*, 1 Mer. 635. Whether these statutes are wholly or in part declaratory of the common law, and whether in this State a mortgage of chattels made with the actual intent to defraud subsequent purchasers would be void by the common law as against such purchasers, with or without notice (see Bac. Abr., Fraud, c; Twyne's Case, 3 Rep. 83, a; 1 Fonb. Eq. 278, n.; 1 Madd. Ch. 221*; 4 Cruise 425*; Com. Dig., Covin, B, 2; Viner Abr., Fraud, I, 9; *Cadogan* v. *Kennet*, Cowp. 434; 1 Gr. Cruise 424,* n.; 4 Kent 462*; 2 Kent 441,* n.; *Hamilton* v. *Russell*, 1 Cranch 316; Co. Litt. 76, a; 290 b; 1 Story Eq., sec. 352; Atherley Set. 207*; Roberts Fraud. Con. 1–12; *Kimball* v. *Hutchins*, 3 Conn. 450; *Sands* v. *Codwise*, 4 Johns. 598; *Angier* v. *Ash*, 26 N. H. 108; *Cooledge* v. *Melvin*, 42 N. H. 534; 2 Hill. Mort. 227; *Gibson* v. *Love*, 4 Florida 217 (citing *Hudnell* v. *Wilder*, 4 McCord 295); *Coppage* v. *Barnett*, 34 Miss. 621; 20 U. S. Dig. 451, 88; *Mason* v. *Baker*, 1 A. K. Marsh. 208; 1 Eq. Dig. 545, 183), we need not inquire, for if we assume that such a conveyance would be invalid as against a subsequent purchaser like the plaintiff, with constructive notice from the record, and that evidence of a design to defraud creditors can be received upon the question of intent to defraud subsequent purchasers, still an intent to defraud the former is not in law an intent to defraud the latter. Roberts Fraud. Con. 51, 59; *Teasdale* v. *Atkinson*, 2 Brev. 48; 5 U. S. Dig. 55, 608; and see *Coppage* v. *Barnett*. For this reason the verdict must be set aside and a

*New trial granted.*