## UNITED STATES *v.* POOLE.

*(District Court, D. Maine.   December, 1880.)*

1. FRAUDULENT CONVEYANCE—SUBSEQUENT LEVY—ALIAS EXECUTION—REV. ST. OF MAINE, *c.* 76, §§ 17, 18.

    The Revised Statutes of the state of Maine (*c.* 76, §§ 17, 18) provide that " a creditor who has received seizin of a levy not recorded, cannot waive it unless the estate was not the property of the debtor, or not liable to seizure on execution, or cannot be held by the levy, when it may be considered void, and he may resort to any other remedy for the satisfaction of his judgment," and that, " when the execution has been recorded, and the estate levied on does not pass by the levy for causes named in the preceding section, the creditor may sue out of the office of the clerk issuing the execution a writ of *scire facias*, requiring the debtor to show cause why an *alias* execution should not be issued on the same judgment; and if the debtor, after being duly summoned, does not show sufficient cause, the levy may be set aside, and an *alias* execution issued for the amount then due on the judgment, unless during its pendency the debtor tenders in court a deed of release of the land levied on, and makes it appear that the land, at the time of the levy, was, and still is, his property, and pays the expenses of the levy, and the taxable costs of suit, and the judgment shall be satisfied for the amount of the levy."

    *Held,* under these statuory provisions, that an execution debtor could not set up a conveyance, made prior to a levy, as fraudulent and void, in order to prevent such levy from being set aside and an *alias* execution issued.

2. SAME—RELEASE SUBSEQUENT TO LEVY.

    *Held, further,* that a subsequent release from the grantee to the grantor of such fraudulent conveyance did not enure to the support of the levy previously made.

    *Freeman* v. *Thayer,* 29 Me. 375.

3. SAME—TENDER OF RELEASE OF LAND LEVIED ON—PROOF OF OWNER-
SHIP.

*Held, further*, that the mere tender by the defendant in court of a
deed of release of the land levied on, did not amount to proof of the
fact "that the land, at the time of the levy, was and still is his prop-
erty," within the meaning of the terms of the statute.—[ED.

*Sci. Fa.*

*W. F. Lunt*, U. S. Dist. Att'y, for United States.

*Geo. F. Talbot*, for defendant.

Fox, D. J.   January 31, 1870, the United States recovered
in this court two judgments against this defendant: one for
$2,062.56 for duties, payable in coin; the other for $3,104.28
for penalties, under act of March 3, 1823, including costs of
suit.   The executions which issued on these judgments were
returned fully satisfied by levies made February 26, 1870, on
real estate in Calais, in this district, as the property of the
debtor.   The government received seizin of the premises, and
the levies were duly recorded.   On the twenty-fifth day of
March, A. D. 1868, the defendant, by his deed of warranty,
reciting a consideration of $6,000 as having been paid, con-
veyed to his son, William B. Poole, various parcels of real
estate, including the premises levied upon.   This deed was
recorded April 2, 1868.   William B. Poole was at that time
about 22 years of age, without property.   He never took actual
possession of any part of the estate so conveyed to him by
his father.   The $6,000 recited as the consideration for the
deed was paid by the son's note for that amount to the
defendant.

Up to the present time S. B. Poole has been in the sole
possession and enjoyment of the premises so conveyed to his
son, and has received all the rents and profits therefrom.
The United States has never, in any manner, asserted any
claim or right to the estates levied upon, or been in posses-
sion of any portion thereof, or received any rents or income
therefrom.   On the seventeenth of June, A. D. 1873, William
B. Poole released to S. B. Poole all interest in various par-
cels of real estate, including that conveyed to him by deed of
March 25, 1868.   This deed was recorded July 22, 1873, and
recited as paid by the grantee a consideration of $10,000.

The deed from S. B. Poole to William B. Poole having been executed and recorded long before the levies, the grantee thereby acquired a better title to the premises than did the government by its levies, unless this deed can be shown to have been fraudulent. The government, by its levies, is in a position to attack the validity of this conveyance, if it elects so to do; but since the levies were made the property has very greatly diminished in value—the buildings thereon having been consumed by fire—and it prefers to abandon its levies and revive its judgments, if possible, for their full amount, with interest, and then satisfy them by levies on other property of this defendant.

It is provided by the Revised Statutes of Maine, *c*. 76, § 17, that "a creditor who has received seizin of a levy not recorded cannot waive it, unless the estate was not the property of the debtor, or not liable to seizure on execution, or cannot be held by the levy, when it may be considered void, and he may resort to any other remedy for the satisfaction of his judgment." By section 18: "When the execution has been recorded, and the estate levied on does not pass by the levy for causes named in the preceding section, the creditor may sue out of the office of the clerk issuing the execution a writ of *scire facias*, requiring the debtor to show cause why an *alias* execution should not be issued on the same judgment; and if the debtor, after being duly summoned, does not show sufficient cause, the levy may be set aside, and an *alias* execution issued for the amount then due on the judgment, unless, during its pendency, the debtor tenders in court a deed of release of the land levied on, and makes it appear that the land, at the time of the levy, was and still is his property, and pays the expenses of the levy, and the taxable costs of suit; and the judgment shall be satisfied for the amount of the levy."

The present suit is instituted under these provisions. The answer of the defendant is that the judgments have been fully satisfied from his estates, and with the answer he files in court a release to the United States of all right, title, and interest in the lands levied on. The burden is upon defend-

ant to maintain his answer. To accomplish this, he must show that, as against the government, his son, William B. Poole, by the conveyance of March 25, 1868, did not acquire a valid title to the estate, and that the government, by its levies, did obtain a good title to the same. This he proposes to do by evidence, to satisfy the court, that his deed to his son was executed with the intent and design of both parties thereto thereby to defraud the United States, to place the property beyond reach of the government, and prevent its being applied to the satisfaction of any judgment the government might thereafter recover against the grantor.

The government insists that the defendant is not at liberty thus, for his own benefit, to attack and impeach his own deed and establish its invalidity by reason of such fraudulent intention. It is certain that as between the parties to this conveyance, however fraudulent may have been their intent, the title to the estate thereby passed to the grantee. Such a transfer is not void, but being a perfect and complete instrument, duly executed with all the formalities of the law, and a consideration having been paid therefor, it was voidable only by creditors of the grantor, and was good between the parties. The question now for decision is whether under these circumstances, as against a creditor whose interest it now is that this conveyance should be sustained, and in the relation which the government now bears to this estate, a grantor shall be heard to offer evidence of his fraudulent purpose and thereby sustain a levy, which, as the record stands, is invalid. In the opinion of the court the grantor must abide by his conveyance, and cannot establish his own fraud to defeat it.

The marginal note in *Roberts* v. *Roberts*, 2 B. & Ald. 367, is: "No man can be allowed to allege his own fraud to avoid his own deed." *Abbott,* C. J., said: "The plaintiff at the trial produced a proper deed of conveyance, and proved its execution, and by that he established his title to the premises. The defendant endeavored to defeat this by showing that the deed was delivered for the fraudulent purpose of giving to the plaintiff a colorable qualification to kill game; but in *Montefiori* v. *Montefiori*, 1 Wm. Bl. 363, Lord Mansfield

said 'that no man shall set up his own **iniquity** as a defence any more than as a cause of action.' Here that is attempted to be done, but the defendant cannot be allowed to be heard in this matter."

In *Walton* v. *Bonham*, 24 Ala. 513, (N. S.) the court say: "The appellant proves that the deed to the children was made to defraud creditors, and sets up the fraud of his intestate in order to defeat the deed, and thus sustain the title to complainants. This cannot be done. The law holds the deed void as against creditors and purchasers, but it can only be so declared when it is attacked for the fraud. Here the deed is not assailed by the purchaser. He assumes, as he has a right to do, that it is honest, and a court of justice will not allow the party who made it to say that it was fraudulent; to do so would be against good morals, and the grantor, under such circumstances, not being permitted to impeach his own deed, his administrator cannot do so."

In *Drinkwater* v. *Drinkwater*, 4 Mass. 356, *Parsons*, C. J., declared "that a conveyance to defraud creditors is good against the grantor and his heirs, and is void only as to creditors; for neither the grantor nor his heirs, claiming under him, can avail themselves of any fraud to which the grantor was a party to defeat any conveyance made by him. The intention of the law in establishing this principle is effectually to prevent frauds by refusing to relieve any man or his heirs from the consequences of his own fraudulent acts. If creditors have been injured by the fraud they are entitled to relief: as to them a fraudulent conveyance is void."

In 2 Philips on Evidence, 184, it is stated: "An instrument may be avoided on the ground of fraud, but the objection is not to come from one who is a party or privy to it, for no one can allege his own fraud in order to invalidate his own deed." The same rule is affirmed in Bump on Fraudulent Conveyances, 437, and is sustained by a very large number of authorities found in the notes.

In no state has this rule been more distinctly recognized than in Maine. In *Nichols* v. *Patten*, 18 Me. 238, *Shepley*, J., says: "The statute of 13 Eliz. *c.* 5, provides that only

against creditors and others, whose actions shall thereby be defrauded or delayed, fraudulent conveyances shall be of more effect." In 43 Me. 274, (*Andrews* v. *Marshall*,) *Cutting*, J., p. 276, in a very elaborate opinion, says: "The doctrine is established beyond controversy, by nearly all the authorities touching this point, that the fraudulent vendor parts with all his title, and can in no event invoke his own turpitude for the purpose of reclaiming any interest in the property so conveyed." See, also, *Ellis* v. *Higgins*, 32 Me. 34; *Andrews* v. *Marshall*, 48 Me. 30.

It is claimed that, while such may be a well-established rule of law, the present case should be deemed an exception thereto, as the government has repudiated this conveyance from the defendant to his son, and by its levies defeated the son's title, and obtained a valid title to the estate. It is true that the government, if it elected so to do, might attack the validity of the deed to the son, and such probably was its original design, as we may well infer from the course first adopted; but having made its levies it has refrained from asserting that thereby it acquired a valid title to the estate. The records disclosed that the son had acquired an older title, and the government yielded, admits its validity, and has never since undertaken to question it. It nowhere appears that the officers of the government in any way had knowledge of the fraudulent purpose of the parties to the conveyance, or that if a contest should take place as to the title that it would be able to establish such fraud, and maintain the validity of its levies. As the record stood there was not merely a cloud upon the title of the government, but as against the son it had apparently acquired no title, and for more than 10 years had acknowledged that such was its condition by not claiming possession of the premises or any income therefrom. The release from the son to the father, in 1873, did not alter the case, as under the law as now settled in this state the title thereby acquired by the father did not enure to support an invalid levy previously made upon the premises as the father's property. *Freeman* v. *Thayer*, 29 Me. 375.

This defendant cannot be damnified by this result; it ac-

complishes exactly what was contemplated by the parties to this conveyance. The defendant has always been recognized, by all the world, as the owner of this estate, and has enjoyed all its benefits. The levies made thereon by the government have, in fact, done him no injury, or defeated or impaired his son's title, who could at any time have given a valid title to a *bona fide* purchaser by reason of his older conveyance. It may be claimed that this defendant, tendering a deed, now offers to make it appear, in accordance with section 18, "that the land at the time of the conveyance was and still is his property." This language must be understood as meaning that the proof of such facts must be made by testimony which can be legally heard in courts of justice; as, for instance, when a debtor has title to a parcel of real estate, but his deed is lost before recording, in such case, if taken from him by a levy, he could establish his title by any testimony legally admissible, and so confirm the title under the levy; but it could not have been the intention of this section to enable a party guilty of a fraud to reap the benefit of his fraudulent acts by reason of testimony prohibited in all other cases.

In the opinion of the court, this defendant cannot be allowed to defeat his conveyance to his son by establishing a fraudulent purpose of the parties, thereby to defraud the United States and prevent the government from appropriating the property in satisfaction of its claims on the defendant. Upon the evidence, which is admissible on this hearing upon the well-established rules of law, the court finds that the estates levied upon are not the property of the debtor, were not liable to seizure on execution, and cannot be held by the levies. The levies are set aside, and the plaintiffs are entitled to *alias* executions for the full amount of their judgments against S. B. Poole, and interest thereon.